UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
MIAMI DIVISION

MICHAEL FORONDA,
EDWARD FORONDA
VIVIAN GORSKY,

    *Plaintiffs*

    v.

State of Florida Governor RON DESANTIS
LAUREL M. LEE State of Florida SECRETARY OF
STATE, JIM ZINGALE, State of Florida Executive
Director of the DEPARTMENT OF REVENUE

    *Defendants*

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION AND FACTUAL BACKGROUND

1. Petitioners, by and through undersigned counsel, hereby file this complaint against the State of Florida ("Florida") and request that a bill signed into law on Thursday, April 21, 2022, be declared unconstitutional and in direct violation of a written statutory commitment Florida entered into in 1967 when it agreed to form the Reedy Creek Improvement District ("Reedy Creek"). **SB 4-C: Independent Special Districts.** Florida passed the bill with the clear intended purpose of eliminating a special legal status that allows Walt Disney World ("Disney") to operate as an independent government ("Ready Creek") around its Orlando-area theme parks.

2. The bill violates Florida taxpayers' federal constitutional rights as well as their clearly delineated rights under the Florida Bill of Rights for Taxpayers.

3. The stated and undisputed reason behind the bill is to punish Disney World and subsequently Florida taxpayers. Governor Ron Desantis has been clear on his intended punishment

of Disney, although he claims the elimination of Disney's special district will not affect central Florida taxpayers. Newsweek, *DeSantis Defends Disney Call as Poll Shows Voters Reject Company Punishment*. Emma Mayer.

https://www.newsweek.com/desantis-defends-disney-call-poll-shows-voters-reject-company-punishment-1702250. April 29, 2022, 12:19 PM) Florida is dismissing and attempting to eliminate Disney World's First Amendment rights, as the bill is intended to hurt Disney because certain company employees expressed disagreement with Florida's recently passed bill known as "Don't Say Gay". **HB 1557.**

4. This lawsuit is one of the very few mechanisms available to taxpayers in such matters. Taxpayer lawsuits such as this one are meant to check and restrict official government misconduct.

5. Plaintiffs in this matter are alleging and will prove that the bill which was signed on Friday, will lead to significant injury to taxpayers, and they clearly have a personal stake in the outcome of this litigation.

6. Governor DeSantis and certain Republican lawmakers made it very clear that they were signing this new bill in order to punish Disney's special status because many Disney employees had expressed disagreement with the "Don't say Gay" bill. (*quote from Desantis where he is ready to fight*). Even though the Governor and certain Republican lawmakers welcome a fight with Disney on this matter, they appear to not want to follow constitutional guidelines and previous legally enforceable agreements involving over $1 billion in bond issuances.

7. A number of experts have publicly opined on this matter, and the great majority have indicated that the new bill will probably lead to increased taxes for the residents of the Orlando area, as well as those that live throughout the State of Florida.

8. Furthermore, the bill is threatening to take away thousands of jobs from Florida. Although Governor DeSantis has publicly claimed that Disney will have to pay more taxes after losing their special tax status, experts have indicated quite the opposite, and this remains an issue for fact finders to make after a full trial. Plaintiffs, who are property owners in the surrounding counties, fear that they will now have to assume the tax burden that Disney previously assumed under the special tax status. Their fear is well founded, and it is through this taxpayer lawsuit and mandamus action that they are able to protect their rights.

9. Disney World for decades has essentially been able to function as its own municipal government. That arrangement was finalized in 1967 between the Walt Disney Company and the State of Florida, and has since been known as the Ready Creek Improvement District. The designation gave Disney certain rights and as such, they were able to avoid certain building regulations, and other municipal codes. Stripping Disney of this special district designation will move these major regulatory burdens unto the county, thereby increasing the Plaintiff's taxes, and will cause significant injury to Plaintiffs. Plaintiffs expect Disney and the State of Florida to litigate this matter for a significant period of time, but it is only legally appropriate that they also be able to protect their interests through this lawsuit.

10. The current Orange County tax collector, Scott Randolph, recently told the Washington Post, that "so they are going to have to raise property taxes. This is a huge tax increase on the citizens of Orange County, that they will have to pay every single year." Click Orlando, *Orange County would see financial burden if Reedy Creek dissolves, tax collector says,*. Lauren Cervantes. https://www.clickorlando.com/news/local/2022/04/20/orange-county-would-see-financial-burden-if-reedy-creek-dissolves-tax-collector-says/. (April 20, 2022, 5:42 PM) Furthermore, removing these special privileges could leave the county responsible for more than One Billion Dollars in debt

servicing, in addition to the cost of covering services Disney currently manages, like the fire department.

## PARTIES

11. Plaintiffs are taxpayers in the state of Florida who will suffer significant injury if the bill is implemented.

12. Plaintiffs Michael Foronda, Eduard Foronda, and Leslie Foronda are Florida residents and currently reside in Osceola County, 2544 Chatham Circle, Kissimmee Fl, 34746.

13. Plaintiff Vivian Gorsky is a Florida resident and currently resides in Orange County, Independence, Florida.

14. Defendant Ron Desantis is the current governor of the State of Florida. Defendant Laurel M. Lee is the current Florida Secretary of State. Defendant Jim Zingale, a current State of Florida Executive, the Director of the Department of Revenue.

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction pursuant to 42 USC Sec. 1983 matters. This court also has jurisdiction over violations of the 1st and 14th Amendment. This court also has jurisdiction as the State of Florida has violated the Contracts Clause **Art.I, § 10** of the Constitution, and the Federal Preemption Clause , **Art. VI., § 2.** of the Constitution.

## CLAIMS

### Count One (1)

## The State of Florida violated its Statutory, Contractual and 3rd Party Obligations to Plaintiffs

16.     Plaintiffs repeat and incorporate by reference ¶¶ 1- 15.

17.     (A) The State of Florida violated its legal statutory and contractual obligations signed in the 1967 Reedy Creek Improvement District Agreement, which forbids it from Dissolving the District until the District's over $1 billion in bond obligations are fully met and discharged, and all other debts are discharged.

18.     Reedy Creek is $1 billion to $2 billion in debt. "Will not in any way impair the rights or remedies of the holders, and that it will not modify in any way the exemption from taxation provided in the Reedy Creek Act, until all such bonds together with interest thereon, and all costs and expenses in connection with any act or proceeding by or on behalf of such holders, are fully met and discharged." The Hill, *Disney says Florida can't dissolve special district without paying $1B debt*. Kelsey Carolan.

https://thehill.com/news/state-watch/3471499-disney-says-florida-cant-dissolve-special-district-without-paying-1b-debt/ (April 29, 2022 11:39 AM.) The bondholders who lent the money expected to be paid back by Reedy Creek, with its superior taxing powers, unstoppable revenue generator (Disney World and its surrounding ecosystem), and autocratic control. (quote article slate or vanity). In fact, when Florida created Reedy Creek in 1967, the Legislature explicitly promised bond buyers that it would not "limit or alter the rights of the District" to use its tools.

19.     In a statement to its bondholders, the Reedy Creek Improvement District pointed out that the 1967 state law establishing Disney's special district states that Florida "will not in any way impair the rights or remedies of the holders…until all such bonds together with interest thereon, and

all costs and expenses in connection with any act or proceeding by or on behalf of such holders, are fully met and discharged." The Hill, *Disney says Florida can't dissolve special district without paying $1B debt*. Kelsey Carolan.

https://thehill.com/news/state-watch/3471499-disney-says-florida-cant-dissolve-special-district-without-paying-1b-debt/ (April 29, 2022 11:39 AM.) In other words, DeSantis's attempt to dissolve the district is illegal unless the State pays the $1 billion first. "In light of the State of Florida's pledge to the District's bondholders, Reedy Creek expects to explore its options while continuing its present operations, including levying and collecting its ad valorem taxes and collecting its utility revenues, paying debt service on its ad valorem tax bonds and utility revenue bonds, complying with its bond covenants and operating and maintaining its properties," the district wrote in the statement.

20. <u>(B) Florida violated its 3rd Party Statutory and Contractual Obligations to Plaintiffs.</u>

21. Standing to enforce such an agreement lies primarily with the signatories but should also include affected parties, if not, those most likely to suffer, the taxpayers, will not be able to defend their interests.

22. The Reedy Creek Improvement Act statute reads: "…" WHEREAS, the Legislature further finds and declares that the purposes of the Act cannot be realized except through a special taxing district having the powers hereinafter provided and that the operation of the District and its facilities and services and the exercise by the Board of Supervisors of the District of the powers and authorities provided for herein are necessary for the convenience, comfort and welfare of the District and all its **inhabitants and landowners**, will **benefit all properties, persons and enterprises within the District**, and constitute a valid public purpose; "

23. The Plaintiffs Are Intended Beneficiaries of the Statutory and contractual obligation between the District and Florida. It is undisputed that Plaintiffs will be affected by Florida's action in repealing the District.

24. As third party beneficiaries, Plaintiffs have the right to enforce those statutory and contractual Provisions. A third-party beneficiary is a person or entity which receives a benefit under a contract, even if it be not a party to the contract conferring that benefit. The status of third-party beneficiary permits a non-party to sue even though they have no obligations under the contract.

25. Under Florida law the "doctrine of third-party beneficiaries provides that a person may sue to enforce a contract, even though the person is not a party to the contract." Mendez v. Hampton Court Nursing Ctr., LLC, 203 So. 3d 146 (Fla. 2016). A non-party qualifies as a third-party beneficiary when the following elements are met: (1) existence of a contract; (2) the clear or manifest intent of the contracting parties that a contractual provision primarily and directly benefit the third party; (3) breach of the contractual provision by a contracting party; and (4) damages to the third party resulting from the breach. Mendez v. Hampton Ct. Nursing Ctr., LLC, 203 So. 3d 146 (Fla. 2016).

26. A party is an intended beneficiary when the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to be long." Dingle v. Dellinger, 134 So. 3d 484 (Fla. 5th DCA 2014). It does not matter that the identity of the third party beneficiaries may not be known at the time the contract is made. See Shingleton v. Bussey, 223 So. 2d 713, 716 (Fla. 1969).

27. The law of third-party beneficiaries is an issue of contract interpretation regarding whether the parties intended to allow a third-party to sue under a contract. "The parties' intention governs contract construction; the best evidence of intent is the contract's plain language." Whitley v. Royal

Trails Prop. Owners' Ass'n, Inc., 910 So. 2d 381 (Fla. 5th DCA 2005). Florida law looks to "nature or terms of a contract" to find the parties' clear or manifest intent that it "be for the benefit of a third party." Am. Sur. Co. of New York v. Smith, 100 Fla. 1012, 130 So. 440, 441 (1930). "[T]he language used in a contract is the best evidence of the intent and meaning of the parties." Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp., 364 So.2d 15, 17 (Fla. 4th DCA 1978).

28. It is clear from the statutory language that the statute in question was for the "convenience, comfort and welfare of the District and all its **inhabitants and landowners, will benefit all properties, persons and enterprises within the District.**"

29. As the District's activities included assistance to taxpayers in the surrounding areas of Osceola and Orange County, and Florida approved of such assistance, third party beneficiaries also live and inhabit those counties.

## Count Two (2)

### Violation of Florida Statute 213.015, Taxpayer Rights.

30. Plaintiffs repeat and incorporate by reference ¶¶ 1- 29.

31. There is created in Florida a taxpayer's Bill of Rights to guarantee that the rights, privacy and property of Florida taxpayers are adequately safeguarded and protected during tax assessment, collection, and enforcement processes.

32. It is a Statute that in simple, non-technical terms establishes the rights and obligations of the department of revenue and taxpayers. The rights of Florida taxpayers are specifically protected, as they are ensured that privacy and property are safeguarded. The Florida statute holds that Florida taxpayers have the right to a fair and consistent application of the tax laws of the state by the

Department of Revenue. The bill at issue calls to serious question the proper application of tax laws to homeowners and other taxpayers in the Orlando area and very possibly other state of Florida taxpayers.

33. Having signed this bill, specifically intended to remove Disney's special tax status, the state's action will unquestionably infringe upon Florida taxpayer's rights as established in Florida statute section 213.015.

## Count Three (3)

### Florida violated Plaintiff's rights under 42 US Code Sec. 1983

34. Plaintiffs repeat and incorporate by reference ¶¶ 1- 33.

35. The bill in question violates' Disney's First Amendment rights, and as such, will also harm plaintiffs. It is without question that Defendant Governor Desantis intended to punish Disney for a 1st Amendment protected ground of free speech. Defendant's violation of Disney's 1st Amendment rights, directly resulted in a violation of Plantiffs' 14th Amendment rights to due process of law.

36. Given that the Florida statute is unconstitutional, the taxpayers respectfully request that it be repealed by this court so that the taxpayers will not have to be unduly burdened with the new taxes and other injuries. In addition to Disney, Plaintiffs are also a party injured as a result of Florida's unconstitutional violation of Disney's 1st Amendment rights and the resulting taxpapers' 14th Amendment right to due process when deprived of life, liberty or property.

## Count Four (4)

<u>The Florida Supreme Court has historically given standing to taxpayers which entitles them to a remedy against a "threatened wrongful proceeding" which might involve them and the whole people of the county in great expense and confusion and jeopardize the title of property.</u>

36. Plaintiffs repeat and incorporate by reference ¶¶ 1- 35.

37. Corporations are obviously capable of expressing themselves, as Disney did when it spoke out against the 'Don't Say Gay" bill. If a government retaliates and attempts to punish a speaker's freedom of speech, they are violating the speaker's constitutional rights. That appears to be exactly what Florida Governor Ron DeSantis is doing to Disney.

38. The first clear statement in Florida jurisprudence regarding taxpayer standing is found in Lanier v. Padgett, 18 Fla. 842 (1882), when the Florida Supreme Court asserted the following:

39. The complainants, simply as taxpayers, in their own behalf and in behalf of other taxpayers, have a standing which entitles them to a remedy against a threatened wrongful proceeding which might involve them and the whole people of the county in great expense and confusion, and jeopardize the titles to property. Id. at 846–847 (citing John Adams, Doctrine of Equity 212 (T. & J.W. Johnson 1850); Hartwell v. Armstrong, 19 Barb. S. Ct. 166 (U.S. 1854); English v. Smock, 34 Ind. 115, 119 (1870); Galloway v. Jenkins, 63 N.C. 147 (1869); Lane v. Schomp, 20 N.J. Chan- cery 82 (1869); LeRoy v. Servis, 2 Caine's Cases 175, 179 (N.Y. 1805))

40. In the landmark *Peck v. Spencer*, 7 So. 642 (Fla. 1890). The Court opined that, [r]esident taxpayers have the right to invoke the interposition of a court of equity to prevent an illegal disposition of the [monies] of a municipal corporation, or the illegal creation of a debt which they, in common with other property holders. A principal source of tax revenue for municipal corporations was and is the ad valorem tax on real property. Fla. Const. art. IX, §§ 2, 5 (1885); Fla. Const. art. VII, § 9 (1968).

## PRAYER FOR RELIEF

For these reason, Plaintiffs Ask the Court to:

a) Hold unlawful and set aside SB 4-C

b) Issue permanent injunctive relief in joining Defendants from enforcing the bill

c) Issues declaratory relief declaring the bill unlawful

d) Award Plaintiffs costs and reasonable attorney's fees.

e) Award such other relief as the Court deems equitable and just.

Respectfully submitted,

William J Sanchez P.A.
Attorney at Law
William Sanchez
(FBN 749060)

13590 SW 134th Avenue Suite 209
Miami, FL 33186.
Telf: (305)-232-8889
Fax: (305)-503-5458
William@wsanchezlaw.com
Council for the Plaintiffs